KIBBLE, APPELLANT, *v.* MORRIS, RESPONDENT.

(No. 7,476.)

(Submitted January 10, 1936.   Decided January 25, 1936.)

[53 Pac. (2d) 1150.]

*Mr. F. W. Mettler,* for Appellant, submitted an original and a reply brief and argued the cause orally.

*Mr. A. G. McNaught,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action seeking to recover upon an alleged written guaranty. The trial of the case resulted in a judgment of nonsuit. The appeal is from the judgment.

Error is assigned upon the exclusion from evidence of the record in the county clerk and recorder's office of the appointment by the Comptroller of the Currency of a receiver for the First National Bank of Roundup, and upon the court's ruling granting the motion for nonsuit.

Plaintiff testified that he had transactions with the First National Bank of Roundup, beginning with the year 1910 when the bank first started, and that on January 18, 1921, he had a passbook for a savings account showing a balance of $1,248.54,

a certificate of deposit for $830.30, and another certificate of deposit for $1,144, all issued by this bank. He testified that on January 18, 1921, he went to the bank and engaged in conversation with the defendant Morris, who was its president, and also with the codefendant Lambert, its cashier, who was not served with process in this case. He detailed this conversation, as follows: "I wanted to take my money out of the bank, and I told him according to the rumor I heard it wasn't in very good situation, and he told me how good the bank was, and I said, 'If the bank is in that good a condition, will you give me an agreement in case the bank became insolvent,' and he sat down and wrote out an agreement and Mr. A. A. Morris signed it, and H. P. Lambert signed it. Mr. Lambert wrote it. I saw Lambert and Mr. Morris sign the paper which I say was prepared by Mr. Lambert after I had had this conversation with Mr. Morris and Mr. Lambert; that is the fact."

The agreement to which plaintiff referred in his testimony was received in evidence and reads as follows:

"January 18, 1921.

"Whereas James Kibble, of Klein, Montana, is the owner of Savings Account pass book number 225, showing a balance to his credit on the date above written of Twelve Hundred Sixty-eight 24/100 Dollars ($1,268.24) and also of Certificates of Deposit No. 4856 for $830.30 and certificate No. 4606 for $1,144.00, and whereas owing to certain rumors originating at Klein, that the banks of Roundup had been subjected to a run and he is in fear that the miners at Klein would withdraw their accounts, we the undersigned, A. A. Morris and H. P. Lambert do personally agree to reimburse the said James Kibble in the amount of his deposit represented by the aforementioned Savings Account pass book and certificates of deposit or their renewals in the event of the insolvency of said bank.

"A. A. MORRIS,
"H. P. LAMBERT."

The plaintiff testified with reference to the passbook and certificates of deposit, that they were deposited with the receiver

for the bank. It appears from the record that the bank closed about March 22 or 23, 1923. Plaintiff testified that he had a conversation with the defendant with reference to the guaranty, as follows: "I said to Mr. Morris that I wanted my money under the agreement which I showed him at that time, and he said he was broke and couldn't pay—'can't pay'—but that he had some coal leases south of Klein; then I said 'I didn't put coal leases in your bank, I put hard cash in' and that is what I wanted.

"Q. What reply did he make to that? A. That is all that was said after that, that he couldn't pay.

"Q. When was the last time you had any conversation with Mr. Morris? A. That was some time after, quite a while after that. That conversation was had on the street in Roundup. I asked him if he was going to pay, and he said, 'No, I am not going to have anything to do with it.' "

As we have observed, error is assigned on the failure of the ▆▆ court to admit in evidence the copy of the order of the Comptroller of the Currency appointing a receiver for the First National Bank of Roundup. The offered proof of this document consisted of the record produced from the office of the county clerk and recorder of Musselshell county, and also a certified copy of the same record. The method of proving "documents in the departments of the United States" is by the certificate of the legal custodian thereof. (Subd. 9, sec. 10568, Rev. Codes 1921.) The record produced contained no certificate of acknowledgment nor other proof of its execution. This court in the case of *Stephens* v. *Nacey*, 49 Mont. 230, 141 Pac. 649, held that a certified copy of a town site plat filed in the office of the clerk and recorder and also in the local land office, the original of which was on file in the office of the Commissioner of the General Land Office at Washington, was inadmissible under this section because the copy was not a certified copy of the original by the officer having it in custody, and that its admission over objection was error. Section 10598, Id., provides for the reception in evidence of certain instruments authorized by law

to be filed or recorded in the county clerk and recorder's office. No authority in law has been called to our attention for the filing or recording of instruments of this character in the office of the county clerk and recorder, but if such law exists, before a certified copy of a document so filed may be admitted in the absence of an acknowledgment or proof as a part of the record, the execution of the document must be proved. (*Angell* v. *Lewistown State Bank,* 72 Mont. 345, 232 Pac. 90.) There was no proof of the execution of this instrument, and neither was there any certificate of acknowledgment or other proof of its execution appearing in the record.

It is urged that this court will judicially notice the public and official acts of the executive departments of the United States pursuant to the provisions of subdivision 3 of section 10532, Revised Codes 1921. If the original document had been produced in court, the trial judge under this section would have been bound judicially to notice the document and it would have been admissible, or if a copy of the document certified by its legal custodian had been offered, it likewise would have been admissible under subdivision 9 of section 10568. As plaintiff failed to comply with either of these methods of proof, as provided by statute, the trial court properly excluded the offered exhibit.

One of the grounds of defendant's motion for nonsuit was that plaintiff had failed to prove the insolvency of the First National Bank of Roundup. Much is said in the brief and argument about the ambiguity and uncertainty of the alleged contract of guaranty. However, whatever may be said on that score, it specifically provides that the defendant Morris only undertakes to be bound in the event of the insolvency of the bank, although it will be noted that no bank is named on the face of the agreement.

In the case of *Stadler* v. *First National Bank,* 22 Mont. 190, 56 Pac. 111, 119, 74 Am. St. Rep. 582, this court said: " 'Insolvency.' has two meanings. In its popular sense, it signifies that condition of a person whose entire assets are insufficient to pay

his debts in full. The term is, however, used, in a restricted sense, to express the present inability of a trader to pay his current obligations as they mature, in the usual course of business. (*Hayden* v. *Chemical National Bank,* 84 Fed. 874, 28 C. C. A. 548; Bouv. Law Dict. tit. 'Insolvency'; Standard Dict. tit. 'Insolvency'; *Buchanan* v. *Smith,* 16 Wall. 277 [21 L. Ed. 280] ; *Case* v. *Citizens' Bank,* Fed. Cas. No. 2,489 ; 2 Kent, Comm. *389, note b; Gluck & Becker on Receivers of Corp., 47.) 'It is in the latter sense that the term is used when traders and merchants are said to be insolvent, and, as applied to them, it is the sense intended by the (bankruptcy) Act of Congress' (*Toof* v. *Martin,* 13 Wall. 40 [20 L. Ed. 481]), and it has the same meaning, as applied to national banks, when used in the Currency Act.'' The question of what constitutes insolvency was also discussed by this court in the cases of *National Bank of Anaconda* v. *Yegen,* 83 Mont. 265, 271 Pac. 612, and *Davies* v. *Montana Auto Finance Corp.,* 86 Mont. 500, 284 Pac. 267.

The only proof in the record from which it might be inferred that the bank was insolvent, whether we apply either of the definitions alluded to by this court in the case of *Stadler* v. *First National Bank,* supra, is the fact that the bank closed and that a receiver had been appointed. The plaintiff did testify that he had not been paid, but nowhere in the record did he testify that he had ever made demand on the bank for the payment of his deposits after the execution of this guaranty.

If the law with reference to national banks provides for the appointment of receivers only in the event of insolvency, then the presumption that official duty has been regularly performed (subd. 15, sec. 10606, Rev. Codes 1921), and the further presumption that the law has been obeyed (subd. 33, sec. 10606, Id.), might be sufficient to take the case to the jury. However, we find that a receiver may be appointed for a national bank on the following grounds: Whenever it has become dissolved and its rights, privileges, and franchise declared forfeited as prescribed in section 93, Title 12, U. S. C. A., or whenever a creditor has obtained a judgment against the bank in any court

of record on a showing that it has remained unpaid for a space of thirty days, or whenever the Comptroller of the Currency becomes satisfied of the insolvency of the bank, after due examination of the facts (sec. 191, Title 12, U. S. C. A.), or the comptroller may appoint a receiver on being or becoming satisfied that the bank has refused to pay its circulating notes (sec. 192, Title 12, Id.). It will thus be observed that the Comptroller of the Currency is authorized in four distinct classes of cases to appoint a receiver, and in three of these classes, in order to exercise the power, insolvency is not involved. Hence, indulging these statutory presumptions, a receiver may have been appointed legally and properly for some cause other than insolvency. Therefore, the fact that a receiver was appointed does not establish prima facie the insolvency of the bank.

It is urged on behalf of the plaintiff that in the conversation ▮ which we have set forth supra, the defendant Morris impliedly admitted liability. The most that can be said of the conversation had with Morris is that it constituted an offer to compromise or settle an asserted claim. An offer of compromise is not an admission that anything is due. (Sec. 10684, Rev. Codes 1921.) Hence this contention must fail.

We are compelled to hold that plaintiff failed to prove the insolvency of the bank when we consider all the evidence, as we have, in the light of all the reasonable presumptions and inferences which may be legitimately drawn from it, and considering it in the light most favorable to the plaintiff. Accordingly, the judgment must be affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.