390 P.2d 801 (1963)
Larry Lewis HOLTZ, Plaintiff and Appellant,
v.
Tim BABCOCK, Governor of the State of Montana, et al., Defendants and Respondents.
No. 10536.
Supreme Court of Montana.
Submitted February 6, 1964.
Decided March 19, 1964.
Leif Erickson and Jerrold Richards, Helena, Leif Erickson (argued), Helena, Jerrold Richards, Helena, for appellant.
Henry Loble and Gene A. Picotte, Helena, Gene A. Picotte and Kenneth Beyer (argued), Helena, for respondents.
JAMES T. HARRISON, Chief Justice.
In this cause both appellant and respondents have filed petitions for rehearing, it being contended that our decision is either in conflict with an express statute or controlling decision to which the attention of the court was not directed, or that material facts were overlooked by the court.
We shall first discuss the contentions raised by the respondents. It is their assertion that under subdivision 3 of section 93-501-1, R.C.M. 1947, we should take judicial notice of a proclamation issued by the Honorable Tim M. Babcock, Governor of Montana, dated January 26, 1962, wherein it is noted that in the crash of a National Guard aircraft on January 25, 1962, six Montana citizens lost their lives, one of whom was the Honorable Donald G. Nutter, *802 Governor of the State of Montana. That, secondly, we should take judicial notice of a letter written by Charles Lynch, Director, Montana Aeronautics Commission, on February 16, 1962, to the State Board of Examiners, wherein it is stated that the Commission wished to lease a Beech Craft 65 Queenaire Aircraft and calls attention to the death of the Governor in the tragic airplane accident as illustrating the long-standing need for safe and adequate transportation of the Governor and other officials of the state; that such aircraft would not only be used in the work of the Commission but would be available as executive transportation for the Governor and others approved and designated. This letter was unanimously approved by the State Board of Examiners on February 19, 1962. Enclosed with the letter were the proposed lease agreement and related documents, including requisition forms.
The aircraft lease was annexed to the amended complaint as Exhibit A and the purchase order as Exhibit B. None of the other documents aforementioned were before the district court, nor contained in the transcript on appeal filed in this cause.
We are cited authorities to the effect that since under the statute courts can take judicial notice of the official acts of the executive department of the state, we can take judicial notice of the action taken pursuant to the letter of the Aeronautics Commission and that from the contents thereof and the proclamation of the Governor it is clear that a public exigency existed. In our opinion herein we commented upon our concern that the statements of counsel dehors the record, now further fortified by tendered exhibits dehors the record, as mentioned above, would disclose that a public exigency existed, and in reliance thereon the State Board of Examiners unanimously gave their approval to an emergency purchase, since under the present law it is only on purchases of an emergency nature that their approval is required.
Be that as it may, as we previously stated, neither this court nor the district courts should be required to assume the burden of informing themselves under the doctrine of judicial notice of facts not within the actual knowledge of the court. We think in this area there is a difference between judicial knowledge and actual knowledge and that the burden resting upon a litigant to present his proof cannot be shifted to the court under the doctrine of judicial notice.
In 20 Am.Jur., Evidence, § 27, p. 55, appears this pertinent statement:
"An appellate court will take judicial notice of any matter of which the court of original jurisdiction may take notice; but it cannot, when sitting in review, judicially notice matters which the original court could not have noticed. In the event a party relies on the judicial knowledge of the trial judge as to local conditions, he must in some form procure that knowledge to be brought into the record, so that an appellate court may rely thereupon, for the general rule is that if the attention of the trial court is not called to a fact within its judicial knowledge and such fact is not judicially noticed, the appellate court will not take judicial notice of it."
Such a situation prevails here, the documents here presented were never before the district court.
Again from Section 21 of Evidence, appearing on page 52 of 20 Am.Jur., we quote:
"Judicial notice in any particular case is not determined or limited by the actual knowledge of the individual judge or court. There is a basic distinction between judicial notice and judicial knowledge. In those instances where a judge is personally conversant with a fact which is judicially cognizable, proof thereof is not required. It is not essential, however, that matters of judicial cognizance be actually known to the judge. If they are proper subjects of judicial knowledge, the judge may inform himself in any way which may seem best to his discretion and act accordingly. On the other hand, facts which are not judicially cognizable must be proved, even though known to the judge or to the court as an *803 individual. In other words, the individual and extrajudicial knowledge on the part of a judge will not dispense with proof of facts not judicially cognizable, and cannot be resorted to for the purpose of supplementing the record."
There is an annotation upon Judicial Notice  Judicial Knowledge in 113 A.L.R., and we quote pertinent portions beginning on page 259:
"The court may, if it wishes, exercise a judicial knowledge sua sponte and without suggestion by counsel. Brown v. Piper (1875), 91 U.S. 37, 23 L.Ed. 200. And see Vahle v. Brackenseik (1893), 145 Ill. 231, 34 N.E. 524, in which the court said: `The court of its own motion will advise itself, so as to verify matter of which it is required to take judicial notice.'
"This does not mean, however, that it is not incumbent upon the party desiring the benefit of a fact of which the court may take judicial notice to bring the matter to the attention of the trial court in some manner. Good practice would seem to require this.
"As stated by Wigmore: `Judicial notice being a dispensation of one party from producing evidence, it would seem that the party must, in point of form, make a request for it.' 5 Wigmore, Ev.2d ed., § 2568.
"So, it was stated in Walton v. Stafford (1897), 14 App. Div. 310, 43 N.Y.S. 1049 (affirmed in (1900) 162 N.Y. 558, 57 N.E. 92): `The court is not invariably bound, sua sponte, to take judicial notice of whatever ought to be generally known. Attention must first be called to the fact, and even then, the party asking the court to take judicial notice thereof must, at the judge's request, furnish the proper books or documentary evidence wherewith to refresh his recollection. Where the memory of the judge is at fault, he may refuse to take judicial notice of the fact, unless such books or documentary evidence are produced.' See also People ex rel. McCallister v. Keokuk & H. Bridge Co. (1919), 287 Ill. 246, 122 N.E. 467.

* * * * * * * * *
"And the court in South Ottawa v. Perkins (1876), 94 U.S. 260, 24 L.Ed. 154, recognized that while the court of a state will take judicial notice of entries in the journal of the state legislature, `the courts of Illinois may decline to take that trouble, unless parties bring the matter to their attention.'
"It was stated by Justice Holmes in Quong Wing v. Kirkendall (1912), 223 U.S. 59, 56 L.Ed. 350, 32 S.Ct. 192: `There are many things that courts would notice if brought before them that beforehand they do not know. It rests with counsel to take the proper steps, and if they deliberately omit them, we do not feel called upon to institute inquiries on our own account.' * * *
"With respect to facts, as distinguished from laws, the weight of authority supports the view that judicial notice will not be taken on appeal of a fact within the judicial knowledge of the court, which was not called to the attention of the trial court and was not judicially noticed by it. See the note in Ann.Cas. 1914B, 196; 1 Jones, Ev.2d.ed., § 474. And see 15 R.C.L., Judicial Notice, § 6.
"`The explanation is that facts susceptible of notice are nevertheless matters of evidence and an appellate tribunal can only review evidence considered by the court below.' 1 Jones Ev.2d.ed., § 474.
"Thus, in Christy v. Wabash R. Co. (1916), 195 Mo. App. 232, 191 S.W. 241 (writ of error dismissed in (1916) 246 U.S. 656, 62 L.Ed. 924, 38 S.Ct. 424), holding that the appellate court would not take judicial notice of action taken by the Interstate Commerce Commission, where the matter was not referred to at the trial nor mentioned in brief or on argument at the original submission of the cause in the appellate court, it was stated: `From motives of necessity, as well as of public policy, courts take judicial notice of general or public law, and their judgments must be supported by such laws, whether called to their attention or not. So there are many classes of things of which *804 the courts take judicial notice, or have judicial knowledge. Some of these are so self-evident as to be ever present in the mind so that they naturally enter into a decision of any point to which they have application; as, for instance, knowledge of the order of succeeding days of the week, or months or seasons of the year, of the familiar laws of nature, etc. But there are other things which, from motives of policy, the law requires a court to judicially notice, or have knowledge of, but of which, in reality, it is ignorant. It is the duty of a litigant desiring the advantage of that knowledge, to suggest it to the court and to assist the court in examining at the proper sources for actual information * * *. The present instance is an apt illustration of the wisdom of the rule requiring the litigant to invoke the court's judicial knowledge. A particular order made by the Interstate Railroad Commissioners is not a thing which a court could reasonably know unless its attention was called thereto, and possibly, the means afforded, if required, for the court to ascertain whether such order in fact existed. But in addition to this, these orders, as we have said, were never mentioned in the trial court, nor were they referred to in this court, and to bring them into the case at this late day would violate the rule in this state that a case must be determined, on appeal, on the same theory presented in the trial court'."
The opinion of this court, in Kibble v. Morris, 101 Mont. 308, 53 P.2d 1150, comments upon the necessity of furnishing proof of matters which can be judicially noticed in these words:
"It is urged that this court will judicially notice the public and official acts of the executive departments of the United States pursuant to the provisions of subdivision 3 of section 10532, Revised Codes 1921 [now R.C.M. 1947, § 93-501-1]. If the original document had been produced in court, the trial judge under this section would have been bound judicially to notice the document and it would have been admissible, or if a copy of the document certified by its legal custodian had been offered, it likewise would have been admissible under subdivision 9 of section 10568 [now R.C.M. 1947, § 93-1001-30]. As plaintiff failed to comply with either of these methods of proof, as provided by statute, the trial court properly excluded the offered exhibit."
Based upon these authorities we believe that our ruling as expressed in our opinion is correct and we adhere to it.
Having disposed of respondents' contention we now turn to those of the appellant.
Appellant contends that the court overlooked certain facts with respect to narrowing the issues, insisting that he never did question the acquisition of an airplane by the Commission but only acquisition of an airplane for the use of the Governor. Counsel vigorously argue that we have arrived at an erroneous conclusion in this respect. It is to be noted that the district judge apparently arrived at the same erroneous conclusion because in his opinion he stated:
"The Court therefore is of the opinion that the contract is one of lease rather than one of purchase. However, for the purpose of the several motions before the Court, the question will be considered from the standpoint of either lease or purchase. We go therefore to the first question involved, namely: whether under the law the Commission had the authority to acquire this aircraft in the manner alleged and use aviation funds to pay for it whether lease or purchase." (Emphasis ours.)
And again this statement:
"Considerable has been said by counsel in briefs and oral arguments concerning the use by the Governor of the State of Montana, his staff and family, of the aircraft in question, the plaintiff contending that such uses (except perhaps in a limited degree as to the Governor for purely official business) are a violation of law and should be enjoined. The defendants contend *805 that as the Governor obviously needs air transportation in a state as large as Montana, it is the duty of this state and the defendant commission to furnish such transportation and the facilities therefor.
"While the complaint alleges that the Governor and others are making use of the aircraft and that such use and the expenditure of state aviation funds for such use are illegal, (since the two questions or issues involved here are the authority of the defendant commission to acquire the plane and to use such funds in its acquisition and the further question of necessity for advertising for bids,) it would appear that the actual use, or uses, to which the defendants or any of them put this aircraft are not here involved and need not be considered in passing upon the motions now before the Court, for dismissal of plaintiff's amended complaint for failure to state a claim on which relief can be granted, and that it being determined that the commission has the authority to acquire the aircraft and to use state aviation funds in its acquisition and to do so without competitive bidding, any use to which any of the defendants may put the aircraft are, if claimed to be illegal, to be proceeded against in some other manner; accordingly the several motions to dismiss are granted." (Emphasis ours.)
Rather clearly it appears to us, the judge presiding, who made the ruling from which this appeal was taken, interpreted the order limiting the issues the same as we have.
However, appellant insists that the question involved is that the Aeronautics Commission did not have power to expend its funds for the purpose of acquiring an airplane for the use of the Governor. If this be true it brings into sharp focus the discussion in our opinion with respect to the right of the appellant to maintain the action, first because he has suffered no irreparable injury, and second because he is not an interested party.
Since appellant now admits that the Aeronautics Commission may purchase an airplane what irreparable injury can he suffer by the purchase of one? Quite obviously, none. Suffering no injury where does his interest arise to maintain this suit?
His only interest as set forth in his complaint is that of a citizen, resident, property owner, taxpayer, owner and operator of an airplane and, as such, purchaser and user of gasoline upon which is collected the state license tax of which one cent per gallon is placed in the state aviation fund.
In Chovanak v. Matthews, 120 Mont. 520, 188 P.2d 582, we stated:
"The interest shown by appellant is only his interest as a citizen, elector, taxpayer and resident of Lewis and Clark County. This is the same interest that the other citizens, electors, taxpayers, and residents of the county have in the matter, and it is not such interest as is permitted to invoke the exercise of the judicial power of determining whether an act of the legislature is violative of the constitution.
"It is held in Montana, as it is held by the United States Supreme Court, and by courts throughout the nation, that a showing only of such interest in the subject of the suit as the public generally has is not sufficient to warrant the exercise of judicial power. [Citing cases.]"
We quoted extensively from State ex rel. Mitchell v. District Court, 128 Mont. 325, 275 P.2d 642, in our opinion and we repeat this portion: "`As a general rule, private citizens may not restrain official acts when they fail to allege and prove damage to themselves different in character from that sustained by the public generally.' [28 Am.Jur. (1940) Injunctions]" (Emphasis ours.)
What damage has appellant suffered which differs from that of the public generally? Every person purchasing aviation gasoline pays the additional one cent tax, it will be neither raised nor lowered by the outcome of this suit, whatever it might be. The only complaint a taxpayer can have is when it affects his pocketbook by unlawfully increasing his taxes. Appellant here does not allege any particular injury which he personally would suffer.
*806 It is quite clear from the appellant's petition for rehearing here that his only purpose in bringing this injunction action is to attempt to stop the Governor from using the airplane. In his complaint he did not pray for any such relief, but he now wants to litigate this issue which in our opinion we stated could not be done because he is not a proper person to maintain such an action, and thus by his own contentions he brings himself within the restrictions laid down in our opinion and the previous decisions of this court. The courts of Montana are not about to invade, at the request of citizens or taxpayers without further interest, the domains of other departments of state government to determine whether or not the use of state-owned property meets with our approval. The Constitution of this state has provided an Attorney General for that purpose, as we pointed out in our opinion, and as noted by the trial judge.
The petitions for rehearing are denied.
CASTLES, JOHN C. HARRISON and DOYLE, JJ., concur.