301 S.E.2d 848

**Patsy McGRAW, etc.**

v.

**L. Clark HANSBARGER,
M.D., etc., et al.**

**No. 15676.**

Supreme Court of Appeals of
West Virginia.

March 31, 1983.

---

Charles R. Garten, Charleston, for petitioner.

David Patrick Lambert and Silas B. Taylor, Asst. Attys. Gen., Charleston, for respondent.

James T. Kratovil, Kratovil & Kratovil, Weston, amicus curiae.

McGRAW, Chief Justice:

In this original proceeding in mandamus, the petitioner, the Honorable Patsy McGraw, seeks to compel the Director of the Department of Health, Dr. L. Clark Hansbarger, to provide detoxification and alcoholism treatment programs at community mental health centers, and to compel the Commissioner of the West Virginia Department of Finance and Administration, Arnold Margolin, to make funds available for the provision of such services. The petitioner further prays for a writ to compel the respondents to take such further action as is necessary to assure that the proper treatment and services are provided.

The events precipitating this litigation occurred on the evening of August 4, 1982, when Charles Canterbury was taken into custody for public intoxication by Cedar Grove police officers and was brought into Kanawha County Magistrate Court, the petitioner herein presiding. Upon presentation before the petitioner, one of the arresting officers completed an application for the involuntary hospitalization of Canterbury for purposes of examination, pursuant to W.Va.Code § 27-5-2 (1980 Replacement Vol.). The application stated that the offi-

cer believed Canterbury to be an alcoholic who would be likely to injure himself or others if allowed to remain at liberty.

Subsequently, the petitioner telephoned the Shawnee Hills Detoxification and Residential Treatment Center (Shawnee Hills), a community mental health center funded through the West Virginia Department of Health, and informed a staff member there that she was sending Canterbury to Shawnee Hills for examination. The petitioner then issued a detention order pursuant to W.Va.Code § 27–5–2(4) (Cum.Supp.1982), directing that Canterbury be taken to Shawnee Hills for a mental status examination. In accordance with the order, a Kanawha County Deputy Sheriff transported Canterbury to Shawnee Hills.

Upon arrival at Shawnee Hills, Canterbury was examined by Joe Deegan, the crisis therapist on duty that evening, who found Canterbury to be intoxicated, belligerent, and homicidal. Following the examination, Deegan telephoned Dr. John Patrick Hutton, the clinical director of Shawnee Hills, and informed him of the results of the examination. Based upon the information given him by Deegan, Dr. Hutton determined that Canterbury could not be admitted to Shawnee Hills in light of the homicidal tendencies he exhibited. Shawnee Hills has no secure facilities to house patients dangerous to themselves or others.

Dr. Hutton then telephoned the petitioner to inform her that Canterbury could not be admitted to the Shawnee Hills treatment center. Dr. Hutton recommended that Canterbury be taken to the emergency room at the Charleston Area Medical Center (CAMC) for examination by a physician, and offered to telephone CAMC so that they would be prepared for Canterbury's arrival. Pursuant to an agreement between CAMC and Shawnee Hills, CAMC provides screening and inpatient services for patients who cannot be admitted to Shawnee Hills.

Thereafter, Canterbury was returned to the magistrate courtroom by a Kanawha County Deputy Sheriff. The petitioner then issued a second detention order direct-

ing that Canterbury be taken to CAMC. At CAMC, the examining physician found Canterbury to be an alcoholic, potentially homicidal, and in need of immediate hospitalization. However, because CAMC also lacks a secure facility to house dangerous patients, Canterbury was denied admission. The examining physician recommended that Canterbury be committed to Spencer State Hospital for detoxification and observation. Canterbury was eventually committed involuntarily to Spencer State Hospital on August 6, 1982.

The petitioner raises four grounds for relief in her petition. First, she alleges that respondent Hansbarger has failed to supervise the resources provided to West Virginia community mental health centers resulting in insufficient inpatient services and other alcoholism treatment in violation of W.Va.Code § 16–1–10(19) (1979 Replacement Vol.). The petitioner further alleges that respondent Hansbarger's failure to supervise such resources to provide inpatient services is also a violation of his duty under W.Va.Code § 27–2A–1 (1980 Replacement Vol.) requiring the establishment of comprehensive community mental health centers. Third, the petitioner alleges that respondent Margolin and State Treasurer Larrie Bailey have failed to make funds available for the treatment of alcoholism as mandated by W.Va.Code § 60–3–9c (1977 Replacement Vol.). Finally, the petitioner alleges that respondent Hansbarger has a duty to assure admission of all persons for detoxification services without regard to their ability to pay for such services.

Accordingly, the petitioner prays for a writ of mandamus directing respondent Hansbarger "to assure the provision of detoxification and alcohol treatment services through the monies afforded to Community Mental Health Centers through the Department of Health," and directing respondent Margolin "to provide monies for such purpose from the monies designated for alcoholism . . . treatment and to take such further action as will assure the proper treatment and services are provided."

A rule to show cause was issued by this Court on September 28, 1982, made return-

able on December 14, 1982, on which date arguments were heard. On December 16, 1982, this Court issued an order based upon the pleadings, the briefs and arguments of counsel, and upon the numerous depositions filed with the Court, granting the petitioner a writ of mandamus for reasons to be stated in this written opinion. The order also granted interlocutory relief prior to the filing of the Court's written opinion, directing respondent Hansbarger to

> provide immediately and forthwith to every Sheriff, Magistrate, and Municipal Police Court Judge in each county of the State, the name, address, and telephone number of an officer or employee of the Department of Health to whom Magistrates and Municipal Judges can, at any hour of the day or night, direct the Sheriff or other officer to transport public inebriates, chronic alcoholics, and other intoxicated persons for purposes of refuge, detention, examination, and where necessary, detoxification ....

*McGraw v. Hansbarger,* No. 15676 (W.Va. Dec. 16, 1982) (order granting writ of mandamus). The order further required respondent Hansbarger to file by December 31, 1982, a written report of the actions he had taken to comply with the Court's ruling. Such report was filed on December 30, 1982.

The issues raised in this proceeding are an outgrowth of this Court's decision in *Harper v. Zegeer,* 170 W.Va. 743, 296 S.E.2d 873 (1982). In *Harper* we held that the criminal punishment of chronic alcoholics for public intoxication violates our state constitutional prohibition against cruel and unusual punishment. W.Va. Const. art. III, § 5. Shortly after the *Harper* decision was handed down, a nineteen-year-old youth, jailed on a public intoxication charge, committed suicide in the South Charleston jail. After this tragic incident, the petitioner in *Harper* filed a petition for rehearing requesting that the Court clarify the procedures surrounding the arrest and detention of public inebriates.

■ The Court granted the petitioner's motion for a rehearing and subsequently issued an addendum to the original *Harper* opinion detailing the procedures currently existing under state law for the arrest and detention of chronic alcoholics and public inebriates. *Harper v. Zegeer,* 170 W.Va. at 751–757, 296 S.E.2d at 881–887. In the addendum we recognized that the Department of Health has the statutory responsibility to provide for the care, treatment and rehabilitation of alcoholics and that the Director of the Department of Health has an affirmative duty to provide a "comprehensive program for the care, treatment and rehabilitation of alcoholics ...." 170 W.Va. at 757, 296 S.E.2d at 885; *see* W.Va. Code § 16–1–10(19).

■ We further recognized in *Harper* that the present statutory procedures for dealing with the public inebriate are unwieldly and in some respects inadequate. 296 S.E.2d at 887. The Department of Health is also keenly aware of the deficiencies in the present system, and has devoted much time and labor to a solution of the problem, including the preparation of proposed legislation to streamline the process. Such efforts on the part of the department are laudable. However, the duty of this Court is to ensure that the rules of Law, as they currently exist, are vindicated. *See, e.g., Cooper v. Gwinn,* 171 W.Va. 245, 298 S.E.2d 781 (1981). We therefore reiterate the positive command of law contained in W.Va.Code § 16–1–10(19), which provides that the Director of the Department of Health "shall" have the duty "[t]o provide for a comprehensive program for the care, treatment and rehabilitation of alcoholics ...." The efforts of the respondent Director of the Department of Health must be tested against this express legislative command.

### I.

■ The central claim of the petitioner underlying her first two grounds for relief is that the Department of Health has a duty to provide inpatient detoxification services and other alcoholism treatment programs at community mental health centers.[1] She bases her claim upon W.Va.

1. The petitioner does not define the term inpa-  tient services in her petition. Respondent Hans-

Code § 16–1–10(19) which requires the Director of the Department of Health "[t]o provide for a comprehensive program for the care, treatment and rehabilitation of alcoholics and drug abusers[,]" and upon W.Va.Code § 27–2A–1 which requires the director "to establish, maintain and operate comprehensive community mental health centers . . . ."

There is no dispute between the parties that a comprehensive alcoholic treatment program should include the provision of inpatient services. Indeed, the Department of Health's own Director of the Office of Behavioral Services asserts in his deposition that a comprehensive program should include a "residential capacity" and an "inpatient capacity for medical problems." The parties differ, however, on whether such inpatient services must be provided at community mental health centers. Respondent Hansbarger contends that the applicable statutes do not require the provision of inpatient alcoholic services at community mental health centers. He argues that W.Va.Code § 16–1–10(19) authorizes the provision of inpatient care not at community mental health centers, but at more centralized locations: "The department's program for the care, treatment and rehabilitation of alcoholics . . . may include, when intended for such purposes, the establishment of special clinics or wards within, attached to, or upon the grounds of, one or more of the state hospitals under the control of the department of health . . . ." W.Va.Code § 16–1–10(19).

■ We note, however, that W.Va.Code § 16–1–10(19) further provides that:

The department's program for the care, treatment, and rehabilitation of alcoholics and drug abusers may include . . . the acquisition . . . of real and personal property and the construction of buildings and other facilities; the leasing of suitable clinics, hospitals, or other facilities; and the utilization, through contracts or otherwise, of the available services and assistance of any professional or nonprofessional persons, groups, organizations or institutions in the development, promotion and conduct of the department's program.

This same language is also contained in W.Va.Code § 27–1A–11 (1980 Replacement Vol.) establishing the department's Division of Alcoholism and Drug Abuse. "State hospital" is defined in chapter 27 as including "any hospital, *center* or institution, or part thereof, established, maintained and operated by the department of health, or by the department in conjunction with a political subdivision of the State, *to provide inpatient or outpatient care and treatment for the mentally ill, mentally retarded or addicted.*" W.Va.Code § 27–1–6 (1980 Replacement Vol.) (emphasis added). It is clear from these statutory provisions that the term "state hospital" contained in W.Va. § 16–1–10(19) encompasses community mental health centers.

■ Furthermore, we note that both W.Va.Code § 16–1–10 and § 27–2A–1 are remedial acts, which we should construe to achieve their beneficial purposes. *See, e.g., Hodge v. Ginsberg,* —— W.Va. ——, 303 S.E.2d 245 (1983); *Gibson v. Rutledge,* 171 W.Va. 164, 298 S.E.2d 137 (1982); *Andy Bros. Tire Co., Inc. v. West Virginia State Tax Comm'r,* 160 W.Va. 144, 233 S.E.2d 134 (1977). A strict construction of these statutes leads to the conclusion that the provision of inpatient alcoholic treatment services is authorized at community mental health centers. Indeed, the record indicates that the Department of Health itself interprets the statutes in this manner, since inpatient alcoholic treatment is provided at community mental health centers supervised by the department, including Shawnee Hills.

■ Moreover, this Court takes judicial notice of the regulations promulgated by the Board of Health governing the licensing of community mental health centers. These regulations provide that inpatient

barger asserts that the term is commonly accepted by health professionals as meaning treatment in a hospital, other medical facility or extended care institution. Section 7 of the Uniform Intoxication Treatment Act defines "inpatient treatment" as "full-time residential treatment in an institution." 9 Uniform Laws Ann. 57 (West 1979).

services are an essential element of care which community mental health centers are required to provide either within the center or on a written contractual basis with another facility. *See* W.Va. Board of Health, *Regulations for Licensing Psychiatric and Other Related Facilities and Programs,* ch. 27–9, §§ 5.1.1; 5.8.3 and 5.8.4 (Series I 1983)[2]

■ The narrower issue presented by the facts of this case, however, is whether such inpatient services must include the capability of treating intoxicated persons who pose a danger to themselves or others. The petitioner asserts that such a capability is a required component of any comprehensive program for the treatment of alcoholics which the respondent is mandated to provide at community mental health centers by W.Va.Code § 27–2A–1. We agree.

W.Va.Code § 27–2A–1 authorizes and directs the director of the Department of Health to establish, maintain and operate comprehensive community mental health centers. The statute provides that all such centers shall have a plan for the provision of diagnostic, treatment, supportive and aftercare services, and a sufficient number of qualified staff to provide these services. W.Va.Code § 27–2A–1(b)(1) and (2). Community mental health centers are required to "[r]ender outpatient services in the aftercare of any patient discharged from an inpatient hospital, consistent with the needs of the individual ... [,]" W.Va.Code § 27–2A–1(b)(4), and to "[h]ave a written

plan for the referral of patients for evaluation and treatment for services not provided." W.Va.Code § 27–2A–1(b)(6).

■ By definition, all public inebriates who are properly remanded to the custody of the Department of Health for involuntary hospitalization for examination pose a danger to themselves or others. *See* W.Va. Code §§ 27–1–4 (1980 Replacement Vol.); 27–5–2 (Cum.Supp.1982); *see also Harper v. Zegeer, supra* at 884. The regulations promulgated by the Board of Health require community mental health centers to offer whatever services which are needed and feasible for the involuntary hospitalization admission of persons charged with a crime. W.Va. Board of Health, *Regulations for Licensing Psychiatric and Other Related Facilities and Programs,* ch. 27–9, § 5.3.2 (Series I 1983). Where possible, the examination is required to be conducted by personnel from the community mental health center in the area. *Id.* at § 17.1.1(a). If the center does not provide direct treatment at the center for every person within the catchment area, the center is required to arrange for the provision of services, either directly or indirectly through systematic referral to other resources. *Id.* at § 5.1.9. Thus, if not available locally, examination of involuntary patents may be performed at other appropriate facilities. *Id.* at § 5.3.4.

To expedite the systematic referral of patients to other facilities, community men-

**2.** The regulations governing the licensing of community mental health centers were filed by the Department of Mental Health on December 6, 1974, effective January 6, 1975, as a revision of the department's 1971 administrative regulations. *See* W.Va. Dept. of Mental Health, *Regulations for Licensing Psychiatric and Other Related Facilities,* ch. 27–1A (Series II 1971). In 1977 the Department of Mental Health was merged with the Department of Health, and the authority for the promulgation of licensure regulations was transferred to the Board of Health. *See* 1977 W.Va. Acts ch. 102. Although refiled on December 30, 1982, *see* W.Va. Board of Health, *Regulations for Licensing Psychiatric and Other Related Facilities,* ch. 27–9 (Series I 1983), the regulations dealing with community mental health centers were last revised in 1975. We refer to the section numbers of the 1982 refiling for purposes of convenience.

The glossary attached to the 1975 revision defines a "comprehensive community mental health center" as "[a] mental health facility which forms a service network providing comprehensive services and continuity of care for individuals with mental illnesses, mental retardation or addiction providing emergency, outpatient, partial hospitalization, inpatient, consultation and education, inservice training and education, research and evaluation, administrative and rehabilitative services." "Addiction" is defined as "the frequent or constant use of alcohol, narcotic or other intoxicating or stupefying substance which renders the person using such substance incapable of exercising reasonable judgment in the conduct of his affairs or which causes such person to be dangerous to himself or others."

tal health centers are required to develop administrative procedures which enable persons needing help to receive needed services without "time consuming referral procedures between elements of service." *Id.* at § 5.1.8(c). Community mental health centers are specifically required to establish and publicize procedures for the involuntary admission of persons charged with a crime. *Id.* at § 5.3.2. Such procedures must specifically be sent to judicial officers within the center's catchment area. *Id.*

In this case, Magistrate McGraw remanded Canterbury to the custody of the Department of Health at approximately 7 p.m. on the evening of August 4, 1982. Yet, despite the consensus of all the parties involved that Canterbury was in need of immediate hospitalization, he was not examined by a physician until 11:30 p.m. the night of August 4, 1982, and, inexplicably, was not admitted to a facility for treatment until August 6, 1982, two days after his examination.

■ Moreover, this Court is troubled by counsel for the respondent's admission during oral argument that in some areas of the state, public inebriates are being held in magistrates' offices because appropriate detoxification and treatment facilities are unavailable. Clearly, magistrates are not required by law to act in such a capacity. Magistrates are judicial officers charged with specific judicial duties. *See generally Donaldson v. Gainer,* 170 W.Va. 300, 294 S.E.2d 103 (1982); *see also* W.Va.Code §§ 50–1–1 *et seq.* (1980 Replacement Vol. & Cum.Supp.1982). Those duties do not include the maintenance of detoxification facilities for alcoholics. The Department of Health is the executive agency of the state charged with the faithful execution of the mental health laws. *See* W.Va.Code §§ 16–1–1; 16–1–10 (1979 Replacement Vol.); W.Va.Code §§ 27–1A–11; 27–2A–1; 27–5–3 (1980 Re-

placement Vol.). As we stated in *Harper v. Zegeer, supra* at 885: "The department is *required* to accept all alcoholics . . . who are involuntarily committed." (emphasis in original). Accordingly, when a judicial officer issues an order remanding a defendant to the custody of the Department of Health as a danger to himself or others, the department has a duty to see that the defendant is placed forthwith in an appropriate mental health facility. *See Harper v. Zegeer, supra.*

■ Under the terms of W.Va.Code § 27–5–9 (1980 Replacement Vol.), "[e]ach patient of a mental health facility receiving services therefrom shall receive care and treatment that is suited to his needs . . . ." We held in Syllabus Point 3 of *E.H. v. Matin,* 168 W.Va. 248, 284 S.E.2d 232 (1981), that "[i]t is the obligation of the State to provide the resources necessary to accord inmates of State mental institutions the rights which the State has granted them under [W.Va.Code § 27–5–9]." Thus, where a public inebriate, who has been remanded to the custody of the Department of Health as a danger to himself or others, requires inpatient care, such care must be provided.

■ After commitment, decisions concerning treatment needs of particular patients and the facility which is most appropriate to render that treatment are medical in nature, requiring knowledge and skills properly within the discretion of Department of Health personnel, *see E.H. v. Matin, supra* at 238, as guided by regulations promulgated by the Board of Health, *see* W.Va.Code §§ 16–1–7; 27–2A–1(a), and by the written plan for the provision of services and referral of patients required by W.Va.Code § 27–2A–1(b)(1) and (6).

■ Pursuant to regulations promulgated by the Board of Health,[3] inpatient

---

**3.** This Court is at a loss understanding why the regulations promulgated by the Board of Health were not cited by counsel in their briefs nor mentioned during oral argument. But irrespective of this oversight on the part of counsel, the regulations, of which we have here taken judicial notice, have the force and effect of law, *see generally State ex rel. Barker v. Manchin,* 167 W.Va. 155, 279 S.E.2d 622 (1981); *Mountaineer Disposal Service, Inc. v. Dyer,* 156 W.Va. 766, 197 S.E.2d 111 (1973); *State ex rel. Morris v. West Virginia Racing Comm'r,* 133 W.Va. 179, 55 S.E.2d 263 (1949), and are therefore binding on the Department of Health. *See also Clarke v.*

services are an essential element of care which community mental health centers are required to provide within the center or on a written contractual basis with another facility. W.Va. Board of Health, *Regulations for Licensing Psychiatric and Other Related Facilities and Programs*, ch. 27–9, § 5.1.1 (Series I 1983). Community mental health centers are the facility of first choice for the examination of involuntarily committed patients. *Id.* at § 17.1.1(a). If not available locally, examination may be performed by referral to other appropriate facilities, *id.* at §§ 5.1.9 and 5.3.4, but published procedures must be in effect to insure the smooth and expeditious referral of patients. *Id.* at §§ 5.1.8(c) and 5.3.2. *See also* W.Va.Code § 27–2A–1(b)(1) and (6).

## II.

The petitioner next claims that the respondents Arnold Margolin, Commissioner of Finance and Administration, and Larrie Bailey, Treasurer of the State of West Virginia, have failed to make funds available for the treatment of alcoholism as mandated by W.Va.Code § 60–3–9c. The statute, which was enacted by the Legislature in 1969, *see* 1969 W.Va. Acts ch. 72, directs the Alcohol Beverage Control Commissioner to increase the price of alcoholic liquors in an amount sufficient to produce an additional annual revenue of one million dollars "[f]or the purpose of providing revenue for care, treatment and rehabilitation of alcoholics ...." This dedicated revenue is directed to be deposited in the state general revenue fund.[4] Thus, the Legislature, by enactment of W.Va.Code § 60–3–9c, has dedicated profits accruing from the sale of alcoholic liquors for the care, treatment and rehabilitation of alcoholics.

The dedicated revenue collected pursuant to W.Va.Code § 60–3–9c is required by law to be deposited in a separate account to be used and expended solely for the care, treatment and rehabilitation of alcoholics. This requirement flows from our constitutional provision which prohibits any money or fund to be taken from the treasury "for any other purpose than that which it has been or may be appropriated, or provided," W.Va. Const. art. X, § 3, and from W.Va.Code § 12–2–2 (Cum.Supp.1982) which provides, in pertinent part:

> All money collected or received under any act of the legislature providing that funds collected or received thereunder shall be used for specific purposes ... shall be carried in separate accounts to be used and expended only for the purpose for which the same are authorized to be collected by law.

In accord with these constitutional and statutory provisions is the general rule that:

> Where a special fund is created or set aside by statute for a particular purpose or use, it must be administered and expended in accordance with the statute, and may be applied only to the purpose for which it was created or set aside, and not diverted to any other purpose or transferred from such authorized fund to any other fund.

81A C.J.S., *States* § 228 (1977) (footnotes omitted). *See State ex rel. Conway v. Industrial Comm'n,* 55 Ariz. 105, 99 P.2d 88 (1940); *Carr v. Frohmiller,* 47 Ariz. 430, 56 P.2d 644 (1936); *Bochert v. Scott,* 248 Ark. 1041, 460 S.W.2d 28 (1970); *Arkansas Game and Fish Comm'n v. Edgmon,* 218 Ark. 207, 235 S.W.2d 554 (1951); *Advisory Opinion to the Governor,* 201 So.2d 226

---

*West Virginia Board of Regents,* 166 W.Va. 702, 279 S.E.2d 169 (1981); *Powell v. Brown,* 160 W.Va. 723, 238 S.E.2d 220 (1977).

**4.** W.Va.Code § 60–3–9c provides:

For the purpose of providing revenue for care, treatment and rehabilitation of alcoholics, the commissioner in the exercise of his authority under section nine of this article is hereby directed to increase the price of alco-

holic liquors in addition to the price increases provided in sections nine, nine-a and nine-b hereof on or before the last day of March, one thousand nine hundred sixty-nine, in an amount sufficient to produce an additional annual volume of one million dollars on an annual volume of business equal to the average for the last three years. Such revenue shall be deposited in the state fund general revenue as provided in section seventeen of this article.

(Fla.1967); *Advisory Opinion to the Governor*, 200 So.2d 534 (Fla.1967); *State ex rel. Charlotte County v. Alford*, 107 So.2d 27 (Fla.1958); *Rich v. Williams*, 81 Idaho 311, 341 P.2d 432 (1959); *State ex rel. Moon v. Jonasson*, 78 Idaho 205, 299 P.2d 755 (1956); *Patterson v. Iowa Bonus Bd.*, 246 Iowa 1087, 71 N.W.2d 1 (1955); *Edwards v. Parker*, 332 So.2d 175 (La.1976); *Irion v. Lyons*, 164 La. 306, 113 So. 857 (1927); *Michigan Sheriffs' Assoc. v. Michigan Dept. of Treasury*, 75 Mich.App. 516, 255 N.W.2d 666 (1977); *Holtz v. Babcock*, 143 Mont. 341, 389 P.2d 869, *rehearing denied*, 143 Mont. 341, 390 P.2d 801 (1964); *In re Montana Trust and Legacy Fund*, 143 Mont. 218, 388 P.2d 366 (1964); *State ex rel. State Bldg. Comm'n v. Smith*, 336 Mo. 810, 81 S.W.2d 613 (1935); *State ex rel. Douglas v. Nebraska Mortgage Finance Fund*, 204 Neb. 445, 283 N.W.2d 12 (1979); *State ex rel. Meyer v. Duxbury*, 183 Neb. 302, 160 N.W.2d 88 (1968); *National Sur. Corp. v. Barth*, 11 N.J. 506, 95 A.2d 145 (1953); *Teer v. Jordan*, 232 N.C. 48, 59 S.E.2d 359 (1950); *State ex rel. Masterson v. Ohio State Racing Comm'n*, 97 Ohio App. 108, 124 N.E.2d 786 (1954); *Prescott v. Commonwealth, Dept. of Welfare*, 36 Pa.Cmwlth. 251, 387 A.2d 498 (Pa.Cmwlth 1978); *Kansas City Bridge Co. v. State*, 61 S.D. 580, 250 N.W. 343 (1933); *Municipality of Metropolitan Seattle v. O'Brien*, 86 Wash.2d 339, 544 P.2d 729 (1976); *State ex rel. Eastvold v. Maybury*, 49 Wash.2d 533, 304 P.2d 663 (1956); *Burbank Irr. Dist. v. Douglass*, 143 Wash. 385, 255 P. 360 (1927); *State ex rel. Owen v. Donald*, 162 Wis. 609, 157 N.W. 794 (1916).

This Court recognized this principle in *State ex rel. Cook v. Lawson*, 110 W.Va. 258, 157 S.E. 589 (1931), where we held in the syllabus:

> Funds derived ... for a particular purpose shall be expended for that purpose and for no other .... And where such funds have been diverted through error, mandamus will lie, on a proper showing, to restore the funds to the purpose for which levied, and to correct the error.

*See also Thomas v. Board of Education of McDowell County*, 167 W.Va. 911, 280 S.E.2d 816, 820 (1981) ("When a levy election is held to raise money for a specific public purpose, the money must be applied towards that purpose."). Accordingly, we conclude that the dedicated revenue collected pursuant to W.Va.Code § 60–3–9c is constitutionally impressed with the nature of a trust which prohibits the expenditure of such dedicated revenue for any purpose other than the care, treatment and rehabilitation of alcoholics.

The budgetary appropriation process provides the means by which the dedicated revenue collected pursuant to W.Va.Code § 60–3–9c may be withdrawn from the special account in the treasury and applied to the purpose for which it was intended. Pursuant to W.Va. Const. art. VI, § 51, the governor is required to submit to the Legislature a budget. The budget submitted by the governor is required to "embrace an itemized estimate of the appropriations, in such form and detail as ... may be prescribed by law ...." W.Va. Const. art. VI, § 51B(3). In this case, W.Va.Code § 60–3–9c prescribes that one million dollars of dedicated revenue shall be applied each year to the care, treatment and rehabilitation of alcoholics. The appropriation of funds by enactment of the budget bill is clearly a function and responsibility of the Legislature. *See State ex rel. Bagley v. Blankenship*, 161 W.Va. 630, 246 S.E.2d 99 (1978). The governor has the constitutional duty to veto appropriations which do not comply with substantive law. *See* W.Va. Const. art. VI, § 51D(11).; *Cooper v. Gwinn, supra* at 792. Once the budget becomes law, it is the governor's duty to see that it is faithfully executed. W.Va. Const. art. VII, § 5.

We note that each year since the passage of W.Va.Code § 60–3–9c the Legislature has enacted the following appropriation: "A fund or collection account, which by law is dedicated to a specific use, is hereby appropriated in sufficient amount to meet all lawful demands upon the fund or collection account ...."[5] Thus, each year since

---

5. *See* 1982 W.Va. Acts ch. 20, § 11; 1981 W.Va. Acts ch. 1, § 11 (First Extraordinary Session);

1969 the Legislature has provided for the appropriation of the one million dollars in dedicated revenue collected pursuant to W.Va.Code § 60–3–9c for the care, treatment and rehabilitation of alcoholics. In *Harper v. Zegeer, supra* at 886–887, we noted that from 1969 to 1980 approximately five million dollars has been appropriated for substance abuse programs, of which alcoholism treatment is a part. According to evidence of record herein, this sum was derived from sources other than appropriations from the special revenue account collected from liquor profits pursuant to W.Va.Code § 60–3–9c which are dedicated exclusively to the care, treatment and rehabilitation of alcoholics.[6] According to law, such revenue, which can only be expended for the purpose for which it was authorized to be collected, has accumulated in the special account and has been carried over each next ensuing fiscal year since the inception of W.Va.Code § 60–3–9c.

Although the petitioner, as a ground for relief, cites the failure of both respondent Margolin and State Treasurer Bailey to make funds available for the treatment of alcoholism as mandated by W.Va.Code § 60–3–9c, in her prayer for relief she seeks only to compel respondent Margolin to provide funds for alcoholism and drug abuse treatment from the revenues raised pursuant to the statute. In response to the petitioner's prayer for relief, we order and direct respondent Margolin, in his capacity as director of the budget, *see* W.Va.Code § 5A–2–1, *et seq.* (1979 Replacement Vol. & Cum.Supp.1982), to consult with and assist respondent Hansbarger in the preparation of an appropriate expenditure schedule for expenditure of the dedicated revenue which by operation of law has accumulated in the special account for the care, treatment and rehabilitation of alcoholics. The surplus dedicated revenue collected pursuant to W.Va.Code § 60–3–9c, which may be expended only for the care, treatment and rehabilitation of alcoholics, should amount to a substantial sum, perhaps as much as $14 million. Utilization of such revenue for the purpose for which it was authorized to be collected by law will facilitate the provision of alcoholic treatment services for alcoholics who pose a danger to themselves or others at appropriate mental health facilities throughout the state.

### III.

The petitioner's final claim for relief is that respondent Hansbarger has a duty to assure admission of all persons for detoxification services without regard to their ability to pay. Apparently, the petitioner was left with the impression that had Canterbury possessed medical insurance coverage or other resources he would have been admitted to the Shawnee Hills Treatment Center. The evidence of record, however, indicates that the petitioner's impression is mistaken. It appears from the record that the ability of a client to pay for alcoholic treatment services is not a factor in the decision of whether such services are to be provided to a particular patient, and that no person has ever been denied admission to the Shawnee Hills Treatment Center either in whole or in part because they lacked financial resources. Thus, while we recognize that the Director of the Department of Health has the duty to assure the admission of all persons for detoxification services at community mental health centers without regard to their ability to pay

1980 W.Va. Acts ch. 3, § 10; 1979 W.Va. Acts ch. 1, § 10; 1978 W.Va. Acts ch. 4, § 10; 1977 W.Va. Acts ch. 2, § 10; 1976 W.Va. Acts ch. 7, § 10; 1975 W.Va. Acts ch. 11, § 10; 1974 W.Va. Acts ch. 2, § 8 (Second Extraordinary Session); 1973 W.Va. Acts ch. 10, § 10; 1972 W.Va. Acts ch. 7, § 8; 1971 W.Va. Acts ch. 6, § 7; 1970 W.Va. Acts ch. 5, § 7; 1969 W.Va. Acts ch. 6, § 7.

**6.** Respondent Hansbarger admits in his brief that state appropriations for alcoholism have not included the one million dollars collected pursuant to W.Va.Code § 60–3–9c. *See* Brief of Respondent L. Clark Hansbarger, M.D., at 111. The depositions of record also support this conclusion. *See* Deposition of Mary Pesetsky at 12–13; Deposition of David McWatters at 28–29. *See also* Deposition of John Bianconi at 44–45. *See generally* Deposition of Randolph W. Meyers. Indeed, the record leaves us with the impression that the Department of Health was unaware of the existence of the special account for revenue generated by W.Va.Code § 60–3–9c prior to this Court's decision in *Harper v. Zegeer, supra.*

**770**

for such services, *see* W.Va.Code §§ 16–1–1; 16–1–10(19); 27–2A–1; 27–5–9; W.Va. Board of Health, *Regulations for Licensing Psychiatric and Other Related Facilities*, ch. 27–9, § 5.1.8(d) (Series I 1983); *see also Harper v. Zegeer, supra; see generally State ex rel. Cook v. Rose*, 171 W.Va. 392, 299 S.E.2d 3 (1982), the record before this Court indicates that respondent Hansbarger recognizes and has fulfilled this duty.

For the foregoing reasons, we grant a writ of mandamus directing respondent Clark L. Hansbarger, Director of the West Virginia Department of Health, to provide forthwith appropriate alcoholic treatment services, including inpatient care for persons who pose a danger to themselves or others, to public inebriates remanded to the custody of the Department of Health pursuant to a judicial order, and directing respondent Arnold Margolin, Commissioner of the West Virginia Department of Finance and Administration, to consult with and assist respondent Hansbarger in the preparation of an appropriate expenditure schedule for expenditure of the dedicated revenue which by operation of law has accumulated in the special trust account for the care, treatment and rehabilitation of alcoholics.

Writ granted.