309 S.E.2d 17 (1983)
CITIZENS CONCERNED ABOUT VALLEY MENTAL HEALTH CENTER, Robert P. Hawkins, individually and on behalf of Karrie Hawkins, Margaret Albertazzie, individually and on behalf of William (Bill) Szapanos, Sandra B. De-Costa and Jean F. McIntosh,
v.
L. Clark HANSBARGER, Director West Virginia Department of Health, Randy Meyers, Director of Behavioral Health Services, West Virginia Department of Health, O. B. Fawley, Director, Valley Comprehensive Community Mental Health Center, Joseph Panepinto, Associate Director, Valley Comprehensive Community Mental Health Center, and Valley Comprehensive Community Mental Health Center, a corporation.
No. 15808.
Supreme Court of Appeals of West Virginia.
November 10, 1983.
*18 William F. Byrne, Morgantown, for petitioners.
Chauncey H. Browning, Atty. Gen. and David P. Cleek, Deputy Atty. Gen. and John H. Skaggs, Asst. Atty. Gen., Charleston, James W. Thomas and W. Warren Upton, Jackson, Kelly, Holt & O'Farrell, Charleston, Tomasky & Friend and L. Edward Friend, II, Morgantown, for respondents.
Stanton & Stanton and Shirley J. Stanton, Fairmont, Kratovil & Kratovil and James T. Kratovil, Weston, for amicus curiae.
McHUGH, Justice:
This original proceeding in mandamus is before this Court upon a petition filed by an organization known as Citizens Concerned About Valley Mental Health Center, et al., in which the petitioners raise regulatory and accountability issues with respect to Valley Comprehensive Community Mental Health Center, located in the Morgantown, West Virginia, area. By order entered on February 8, 1983, this Court issued a rule directing the respondents to show cause why relief should not be awarded against them. This Court has before it the petition for a writ of mandamus, the responses to that petition, all matters of record and the briefs and argument of counsel.
Pursuant to orders of this Court, briefs amicus curiae were filed in this action by Pamela S. Fawley and the Association of Community Mental Health/Mental Retardation Programs of West Virginia.
The petitioners include various citizens who reside in the area served by Valley Comprehensive Community Mental Health Center and who bring this action individually and on behalf of certain mentally retarded persons. The respondents include officers of the West Virginia Department of Health and officers of Valley Comprehensive Community Mental Health Center.
Valley Comprehensive Community Mental Health Center (hereinafter "Valley") is *19 a private, nonprofit corporation principally operating upon property it leases from the State of West Virginia in the Morgantown, Monongalia County, area. Since 1974, Valley has provided certain mental health services for Monongalia, Marion, Preston and Taylor counties. It is administered locally by a Citizen Board of Directors with respondent O. B. Fawley as its director and respondent Joseph Panepinto as its associate director. Valley receives funds from the State of West Virginia and, pursuant to W.Va.Code, 27-2A-1 [1977], is subject to rules and regulations promulgated by the Board of Health of the West Virginia Department of Health.

I

Contentions of the Parties
The principal contention of the petitioners in this action is that Valley is not providing needed mental health services to the community it serves.[1] The primary cause of that lack of services, the petitioners contend, is the West Virginia Department of Health. According to the petitioners, the Department of Health has failed to promulgate rules and regulations which would require Valley to provide certain basic mental health services to the community. The petitioners contend that the Department of Health has a responsibility to insure, through its regulatory power, that certain basic mental health services are provided to the public. Thus, the petitioners seek a writ of mandamus to compel the Department of Health to promulgate such rules and regulations.
A second issue raised by the petitioners relates to the accountability of Valley to the public, particularly with regard to the use of state funds. The petitioners contend, inter alia, that state funds have been misused through the establishment at Valley of inflated salaries and inflated employee benefits and privileges. The petitioners contend that the Department of Health is ultimately responsible for that alleged misuse of state funds because of a failure by the Department of Health to effectively supervise those funds.
On the other hand, the respondents contend that the type of mental health services provided by Valley and the management of Valley are, in fact, regulated by the Department of Health, at least to an extent sufficient to deny the petitioners relief in mandamus.
However, the respondents further contend that Valley has the authority to estimate the mental health needs of its community and to determine which specific services it shall provide to meet those needs. The respondents contend that additional state rules and regulations sought by the petitioners, which would require that Valley provide particular mental health services, would diminish community involvement in the decision making process at Valley concerning services and would diminish the flexibility Valley needs to serve its constituency.
With respect to the issue of accountability, the respondents contend that Valley's management is monitored by the Department of Health and that, in any event, the management of Valley, including its use of funds, rests largely within the discretion of the Citizen Board of Directors.[2]

*20 II

Statutory, Regulatory and Accountability Standards

A. The Statutes
The West Virginia Department of Health[3] through its Board of Health and Director has a duty to insure the effective delivery of mental health services in this State. W.Va.Code, 16-1-1 [1977].[4] That responsibility as it concerns respondent Valley is illustrated by the provisions of W.Va. Code, 27-2A-1 [1977]. That statute provides as follows:
(a) The director of health is authorized and directed to establish, maintain and operate comprehensive community mental health centers and comprehensive mental retardation facilities, at such locations within the State as may be determined by the director in accordance with the state's comprehensive mental health plan and the state's comprehensive mental retardation plan. Such facilities may be integrated with a general health care or other facility or remain separate as the board of health may by rules and regulations prescribe: Provided, that nothing contained herein shall be construed to allow the department of health to assume the operation of comprehensive regional mental health centers or comprehensive mental retardation facilities which have been heretofore established according to law and which, as of the effective date of this article, are being operated by local nonprofit organizations.
(b) Any new mental health centers and comprehensive mental retardation facilities herein provided for may be operated and controlled by the department of health or operated, maintained and controlled by local nonprofit organizations and licensed according to rules and regulations promulgated by the board of health. All comprehensive regional mental health and mental retardation facilities licensed in the State shall:

*21 (1) Have a written plan for the provision of diagnostic, treatment, supportive and aftercare services, and written policies and procedures for implementing these services;
(2) Have sufficient employees appropriately qualified to provide these services;
(3) Maintain accurate medical and other records for all patients receiving services;
(4) Render outpatient services in the aftercare of any patient discharged from an inpatient hospital, consistent with the needs of the individual. No person who can be treated as an outpatient at a community mental health center shall be admitted involuntarily into a state hospital.
(5) Have a chief administrative officer directly responsible to a legally constituted board of directors of a comprehensive mental health or mental retardation facility operated by a local nonprofit organization, or to the director of the department of health if the comprehensive mental health or mental retardation center or facility is operated by the department of health; and
(6) Have a written plan for the referral of patients for evaluation and treatment for services not provided.
The state's share of costs of operating such facilities may be provided from funds appropriated for this purpose within the budget of the department of health. The director shall administer these funds among all comprehensive mental health and mental retardation facilities as may be required to best provide comprehensive community mental health care and services to the citizens of the State.
After the first day of July, but not later than the first day of August of each year, the chief administrative officer of each comprehensive regional mental health center and mental retardation facility shall submit a report to the director of the department of health and to the legislative auditor containing a listing of:
(1) All funds received by the center or facility;
(2) All funds expended by the center or facility;
(3) All funds obligated by the center or facility;
(4) All services provided by the center or facility;
(5) The number of persons served by the center or facility; and
(6) Other information as the board of health shall by regulation prescribe.
The provisions of W.Va.Code, 27-2A-1 [1977], W.Va.Code, 27-9-1 [1977], W.Va. Code, 16-5B-1 [1977], and W.Va.Code, 16-5B-2 [1977], require that, in order to function, mental health-mental retardation centers such as Valley must obtain a license from the state.[5] Furthermore, as W.Va. *22 Code, 27-2A-1 [1977], provides, Valley, to justify its licensure, must satisfy a number of statutory requirements, including requirements relating to services, employees and records, and ultimately, be responsible to the Department of Health.
In addition to the licensure requirements enumerated in W.Va.Code, 27-2A-1 [1977], for centers such as Valley, that statute also provides certain accountability standards. W.Va.Code, 27-2A-1 [1977], requires the chief administrative officer of the center to annually report to the Director of the Department of Health and to the legislative auditor concerning funds received, expended or obligated by the center. That report must also list the services provided by the center, the number of persons served by the center and other information as required.

B. The Rules and Regulations
In addition to the provisions of W.Va. Code, 27-2A-1 [1977], this Court has before it Exhibit E filed by respondents Hansbarger and Myers. That exhibit consists of rules and regulations of the Board of Health concerning the licensing of mental health centers such as Valley.[6] With respect to services to be provided by the centers to the community, those rules and regulations provide as follows:
5.1.1. Community Mental Health Center A community mental health center is a mental health facility which provides within the center or on a written contractual basis, the following essential elements of care:
(a) Emergency;
(b) Outpatient;
(c) Partial hospitalization;
(d) Inpatient; and
(e) Consultation and Education....
5.1.2. Comprehensive Community Mental Health Center  The comprehensive community mental health center is a mental health facility which provides within the center or on written contractual basis, in addition to the five (5) essential elements of care set forth in Section 5.1.1 of these regulations, the following supportive services:
(a) In-service training and education;
(b) Research and evaluation;
(c) Administrative services;
(d) Rehabilitation services.
The five "essential elements of care" enumerated in section 5.1.1, associated with community mental health centers, are more fully defined in sections 5.5, 5.6, 5.7, 5.8 and 5.9 of the rules and regulations.[7]
In conjunction with the provisions of W.Va.Code, 27-2A-1 [1977], and the services enumerated in sections 5.1.1 and 5.1.2 above, the rules and regulations permit the governing body of mental health centers such as Valley to coordinate services with the needs of the community. Section 5.1.13(f) provides as follows:
Special governing body meetings devoted to long-range planning shall be held periodically to integrate the community mental health services provided with other state and local mental health services; to develop new services as needed; eliminate services in keeping with the changing needs of the community; and integrate fiscal structures with other mental *23 health affiliates, state and local, to strengthen total community mental health/mental retardation fiscal structures and avoid duplication of services and personnel costs....
Furthermore, the executive officer or director of such centers is responsible, pursuant to section 5.1.3(j)(19), for the "[e]stablishment of a system of constant evaluation of the efficiency and effectiveness of the center programs to determine: a. What kinds of clients are being served; b. Any deficiencies in the client's total care program; and c. Use of the community's total resources to serve clients."

C. Other Matters
In addition to the provisions of W.Va. Code, 27-2A-1 [1977], and the above rules and regulations, this Court has before it a lease agreement made on November 2, 1981, between the West Virginia Department of Health and Valley and a "purchase of services contract" dated July 1, 1982, between the Department of Health and Valley.
Pursuant to the lease, Valley obtained from the Department of Health the use of certain property in Monongalia County. The lease provides that Valley shall file an "annual report" with the Department of Health and will allow the State to "inspect the physical facility annually." The lease further provides that Valley shall use the leased premises to operate a facility "for the use and treatment of persons who are emotionally disturbed or developmentally disabled and for the purposes indicated in the comprehensive mental health plan adopted by the State of West Virginia and for no other purposes...."
The July 1, 1982, purchase of services contract between the Department of Health and Valley contains various provisions concerning both the nature of services to be provided by Valley and accountability measures. With respect to services, the contract, as amended, provides, in part, as follows:

II. Assurances Made by the "Provider"

A. Service Provision

1. The "Provider" will strictly adhere to state statutes, standards, regulations and subsequent amendments as applicable. Services provided under this contract will meet the Program Review Guide Standards and Criteria, 1981.
2. The "Provider" agrees to provide the following services: ... Hospital based treatment; Community based residential care (short-term); Community based residential (long-term); Total 24 hour treatment; Day treatment/training; Total 3 to 8 hour day services; Services less than 3 hours; Total direct services; Consultation, education & prevention activities; Intraorganizational support; Total indirect services.
3. The "Provider" agrees to provide the services above to individuals and families most in need, emotionally and financially.
The contract, as amended, contains provisions concerning the accountability of Valley to the public. Those provisions include the following:

II. Assurances Made by the "Provider"

B. Management Requirements

1. The total cost of purchased services shall be substantiated by the "provider's" budget which will be submitted on forms prescribed by the "Department." Included with the "Provider's" budget will be a detailed annual program description and plan. This budget and annual program plan will be negotiated and agreed upon by both the "Department" and the "Provider" prior to payment for services rendered.

* * * * * *

G. Monitoring and Review

1. The "Provider" agrees that a program and facility review may be conducted at any reasonable time by State and federal personnel and any other persons duly authorized by the "Department" with respect to the services provided hereunder.
2. The "Provider" shall retain all fiscal and service documents relating to this contractual agreement and the performance *24 thereof for a period of at least three years after receipt of payment by the "Provider" for such services. State and federal auditors and any persons duly authorized by the "Department" shall have full access to and the right to examine any of such books, records and other documents during such three year period.
The Program Review Guide, mentioned above in part II.A. 1. of the contract, is a means by which the Department of Health evaluates or monitors the activities of centers such as Valley. As the record before this Court indicates, the Program Review Guide contains twenty-two standards, and eighty-eight specific criteria within those standards, by which the Department of Health, by way of on-site visits, evaluates or monitors centers such as Valley.[8]
A 1982 evaluation of Valley, based upon the Program Review Guide, was filed by respondent Valley in this action. That evaluation indicated that although services at Valley were generally "consistent with national and state guidelines," Valley met only six of the twenty-two Program Review Guide standards.

III

Enforcement
An examination of the above statutes, rules and regulations, lease, contract and Program Review Guide, and other matters of record, reveals an intent upon the part of the West Virginia Legislature that the board of directors of comprehensive community mental health centers such as Valley shall have some discretion with respect to the delivery of mental health services to the public but that such discretion must be exercised within various statutory and regulatory guidelines and standards established by the state. Those guidelines and standards relate to both the nature of the mental health services to be delivered by the mental health centers and to issues of public accountability by the centers.
The discretion of the board of directors of centers such as Valley to determine services to be provided is described in section 5.1.13.(f) of the rules and regulations of the Board of Health of the West Virginia Department of Health. That section provides that the governing body of the centers shall conduct meetings to "develop new services as needed," and "eliminate services in keeping with the changing needs of the community." We find that section to be consistent with the policy statement found in W.Va.Code, 16-1-1 [1977], that "active participation of the citizens of this State" shall be encouraged in matters relating to the delivery of health and mental health services. As indicated, however, centers such as Valley, utilizing state funds, are ultimately subject to the State of West Virginia by way of the Department of Health.[9]
*25 With respect to state involvement concerning services, the provisions of W.Va. Code, 27-2A-1 [1977], require centers such as Valley to have a "written plan for the provisions of diagnostic, treatment, supportive and aftercare services, and written policies and procedures for implementing these services." The rules and regulations of the Board of Health, however, are more specific. Those rules and regulations, in section 5.1.1., set forth several "essential elements of care" which the mental health centers have a responsibility to provide to the public. Those "essential elements of care" are more fully defined in other sections of the rules and regulations. Other required services for which the state holds Valley responsible are found in sections II.A.1 and 2 of the July 1, 1982, purchase of services contract between the Department of Health and Valley, as set forth above.
The discretion of the board of directors of Valley, therefore, to determine the mental health services needed by the community it serves is subject to certain obligatory services required by law.
In summary, we hold that the discretion of the board of directors of comprehensive community mental health-mental retardation centers, such as Valley Comprehensive Community Mental Health Center, to determine the nature of mental health services which such centers provide to the communities they serve is circumscribed by guidelines and standards established by the State of West Virginia and, in particular, by the West Virginia Department of Health; those guidelines and standards are reflected (1) in the provisions of W.Va.Code, 27-2A-1 [1977], which statute enumerates various requirements for the licensure of comprehensive community mental health-mental retardation centers, (2) in the rules and regulations relating to such centers promulgated by the Board of Health of the West Virginia Department of Health and (3) in other matters, including lease and service contract agreements between the State of West Virginia and comprehensive community mental health-mental retardation centers and state monitoring or evaluation of such centers.
Furthermore, state involvement is present with respect to the issue of Valley's accountability to the public. That accountability may be said to originate with the Director of the Department of Health in that, pursuant to the terms of W.Va.Code, 27-2A-1 [1977], the director must administer state funds among the mental health centers "as may be required to best provide comprehensive community mental health care and services to the citizens of the State." That statutory provision specifically requires annual reporting to state officials by centers such as Valley concerning the use of funds and services provided to the public. As described above, additional accountability measures may be found in the rules and regulations promulgated by the Board of Health, the lease and purchase of services contract between the Department of Health and Valley, and the Program Review Guide.
We are of the opinion, therefore, that, based upon the record in this action, a framework has been established by the State of West Virginia and, in particular, by the Department of Health, to comply with the policy of this State, articulated in W.Va.Code, 16-1-1 [1977], to insure the effective delivery of mental health services to the public. See n. 4, supra. However, the adequacy of that framework, which includes primarily the rules and regulations promulgated by the Board of Health, and the enforcement of that framework, constitute factual questions involving the mental health needs of the public served by Valley and ought to be resolved, under the circumstances of this action, before the Department of Health, as indicated below.
The petitioners should, therefore, be permitted to assert before the Department of Health that the needs of the public served by Valley cannot be met under the guidelines and standards established by the State of West Virginia and, in particular, by the Department of Health. In addition, the *26 petitioners should be permitted to assert that those guidelines and standards, if adequate, are not being enforced. In resolving those issues, the Department of Health should consider, for example, the contentions of the petitioners that Valley has acted unfairly toward its patients and other members of the public and has misused state funds through the establishment of inflated salaries and inflated employee benefits and privileges. Those matters cannot be resolved upon the record before this Court.
The Director of the West Virginia Department of Health has the power by statute to enforce the rules and regulations promulgated by the Board of Health, and the Director of the West Virginia Department of Health and certain others have the power by statute to hold investigations, inquires and hearings concerning matters covered by the laws of this State pertaining to public health and within the authority of the Board of Health, and the rules, regulations and orders of the Board.[10]W.Va. Code, 16-1-10(20) [1983]; W.Va.Code, 16-1-16 [1949]; W.Va.Code, 16-5B-8 [1977].
The issues raised by the petitioners require factual development and disposition, and as W.Va.Code, 16-1-16 [1949], indicates, those issues may be brought before the West Virginia Department of Health. Those issues have not been fully litigated. A substantial amount of evidence has been presented in this action concerning the administration of Valley. We, therefore, direct the West Virginia Department of Health to hold "investigations, inquiries and hearings," pursuant to W.Va.Code, 16-1-16 [1949], upon the administration of Valley Community Mental Health Center and upon the adequacy and enforcement of applicable guidelines and standards.
Writ as moulded awarded.
NOTES
[1] Rather than being limited to circumstances surrounding Valley Comprehensive Community Mental Health Center, the contentions of the petitioners involve all mental health-mental retardation centers operating in this State under the provisions of W.Va.Code, 27-2A-1 [1977]. However, the specific allegations of the petition upon which the prayer for relief is based and the responses to those allegations relate to Valley alone.
[2] The position of the respondents in this action is summarized in the brief filed by Valley as follows:

Valley readily admits that the Department of Health has ample authority to establish, by regulation or otherwise, accountability standards under which private, non-profit community mental health systems must operate. Such standards are in existence and are enforced by the Department. There is no legislative mandate, however, for the Department to issue detailed regulations describing which services must be provided, what salary levels and benefits are allowable, and other types of uniform regulatory standards outlined in the petition.
[3] As we stated in West Virginia Department of Health v. Mathison, W.Va., 301 S.E.2d 783 (1983): "By legislation effective on July 1, 1977, the West Virginia Legislature provided for the consolidation and reorganization of certain state agencies relating to public health." 301 S.E.2d at 784. A new West Virginia Department of Health was formed and the West Virginia Department of Mental Health was brought into the new Department of Health. W.Va.Code, 27-2-1 [1977].
[4] W.Va.Code, 16-1-1 [1977], articulates the policy of this State with respect to health services, including services relating to mental health. That statute provides, in part, as follows:

It is the policy of this State to effect a significant improvement in the delivery of health and mental health services for the benefit of the citizens of this State; to develop and implement a coordinated and comprehensive continum of health and mental health services to meet current and future needs at a reasonable cost; to promote the delivery of preventive care by emphasis on primary care and community based services; to achieve equal access to all types of quality care for all citizens of the State; to encourage the active participation of the citizens of this State in matters relating to the delivery of health and mental health services....
See also W.Va.Code, 16-1-10a [1959].
The Board of Health and the Director of the West Virginia Department of Health have statutory powers to insure that proper mental health services are provided in West Virginia. W.Va.Code, 16-1-7 [1979], confers regulatory power upon the Board of Health and states, in part, as follows: "The board shall have the power to appoint or designate advisory councils of professionals in the areas of hospitals... mental health and mental retardation centers and such other areas as it deems necessary to advise the board on rules and regulations."
With respect to the Director of the Department of Health, W.Va.Code, 16-1-10 [1977], enumerates certain powers of the Director which include, in subsection 7, the power to "develop and maintain a state plan of operation which sets forth the needs of the State" in the area of mental health and, in subsection 20, the power to enforce "all health laws and the rules and regulations promulgated by the board...." In subsection 18, W.Va.Code, 16-1-10 [1977], authorizes the Director as follows:
To provide for, except as otherwise specified herein, a comprehensive system of community mental health and mental retardation supportive services to the end of preventing the unnecessary institutionalization of persons and promoting the community placement of persons presently residing in mental health and mental retardation facilities and other institutions and for the planning of the provisions of comprehensive mental health and mental retardation services throughout the State....
[5] W.Va.Code, 27-9-1 [1977], provides that no hospital, center or institution providing service to the mentally ill or mentally retarded shall be established or operated "unless a license therefor shall be first obtained from the director of health." That statute, in addition, confers regulatory and investigative powers upon the Director and states that the Director may revoke the license of such hospital, center or institution "for good cause."

In W.Va.Code, 16-5B-1 [1977], an "ambulatory health care facility" is defined to include "any facility which provides health care or mental health care to noninstitutionalized persons on an outpatient basis." That statute states that no "person, partnership, association, corporation, or any local governmental unit ..." shall establish or maintain any ambulatory health care facility without first obtaining a license.
Similarly, W.Va.Code, 16-5B-2 [1977], provides that no "person, partnership, association, corporation, or any local governmental unit..." may continue to operate an ambulatory health care facility "unless such operation shall have been approved and regularly licensed by the State."
With respect to institutions required to be licensed under article 5B, it should be noted that W.Va.Code, 16-5B-8 [1977], provides, in part, as follows:
The board of health shall have the power to promulgate rules and regulations and the director shall have the power to enforce such rules and regulations, as the board of health may establish, not in conflict with any provision of this article, as it finds necessary, or in the public interest, in order to protect patients in institutions required to be licensed under this article from detrimental practices and conditions, or to ensure adequate provision for their accommodations and care.
[6] Several revisions of the rules and regulations in question of the Board of Health have been filed in the office of the West Virginia Secretary of State. The latest revision was filed in the office of the Secretary of State on December 30, 1982, prior to the filing of the petition in this action.
[7] Section 5.1.9 of the rules and regulations of the Board of Health also concerns services to be provided to the community. That section provides as follows:

5.1.9. Provision of Services to All Persons in Catchment Areas, When Needed  If a community mental health center does not provide direct treatment at the center for every person in need of services within the catchment area, the center must arrange for the provision of services, either directly or indirectly through systematic referral to other resources, both private and public, to residents of the catchment area.
With respect to a mental health center's location of services within the community, see sections 5.1.8 and 5.16.1. of the rules and regulations.
[8] Standards I.C.1. and II.C.2. of the Program Review Guide, relating to centers or "agencies" such as Valley, provide as follows:

I.C.1. The agency shall have a comprehensive plan for all programs and services offered or contracted by the agency.
II.C.2. The agency shall ensure that its services are accessible, acceptable, and available to existing and potential service recipients.
Above standard II.C.2. contains the following eight criteria:
1. The agency's services are provided at locations convenient to existing and potential service recipients.
2. The agency's service fees schedule does not constitute a barrier to service provision.
3. The agency's services are initiated in a timely manner relative to the service need.
4. The agency's services are structured to minimize the disruption of the individual's life and represent the least departure from normal patterns of living.
5. The agency has procedures for providing services to service recipients affected by physical barriers.
6. The agency has written policies and procedures to define and protect the rights of its service recipients.
7. The agency has written policies and procedures for acquiring and communicating client information.
8. The agency has written policies and procedures that govern the setting of fees for service and for maximizing the collection of these fees.
[9] The authority of the West Virginia Department of Health to promulgate rules and regulations concerning mental health centers such as Valley is outlined in the provisions of W.Va. Code, 16-1-7 [1979], W.Va.Code, 16-5B-8 [1977], and W.Va.Code, 27-9-1 [1977]. See, n. 4 and n. 5, supra.
[10] W.Va.Code, 16-1-16 [1949], provides, in part, as follows:

The state board of health, any member thereof, the director of health, or any officer or employee of the department of health designated by the board of health, shall have the power to hold investigations, inquiries and hearings concerning matters covered by the laws of this State pertaining to public health and within the authority of the state board of health, and the rules, regulations and orders of the board. Hearings shall be open to the public and shall be held upon such call or notice as the board shall deem advisable.