318 S.E.2d 433

**STATE of West Virginia ex rel. M.K.**

v.

**Ed. BLACK, Director, Adolescent Unit Lakin State Hospital, et al., etc.**

**No. 16100.**

Supreme Court of Appeals of West Virginia.

June 13, 1984.

Daniel F. Hedges, Charleston, for relator.

David P. Lambert, Asst. Atty. Gen., Charleston, for respondents.

McHUGH, Chief Justice:

This is an original proceeding in mandamus in which the relator, M.K., seeks to compel the respondents to provide juveniles in West Virginia with a comprehensive substance abuse treatment program.[1] The fol-

---

1. The phrases "substance abuse" and "substance abuser" will be used throughout this opinion to denote the abuse of alcohol and drugs as defined in *W.Va.Code*, 27–1A–11 [1983]. "'Alcohol abuse' means the periodic, frequent or constant consumption of alcoholic beverages to the extent that one's health is substantially impaired or endangered or one's social or economic functioning is substantially disrupted." *W.Va.Code*, 27–1A–11(b)(4) [1983]. "'Alcoholic abuser' means a person whose use of alcohol has produced any of the effects described in subdivision (4) of this subsection." *W.Va.Code*, 27–1A–11(b)(3) [1983].

"'Drug abuse' means the use of any controlled substance as that term is defined in ... chapter sixty-A, until such time as the user has become dependent upon or addicted to the same." *W.Va.Code*, 27–1A–11(b)(6) [1983]. "'Drug abuser' means a person who is in a state of psychic or physical dependence, or both, arising from the administration of any controlled substance, as that term is defined in chapter sixty-A of this Code, on a continuous basis." *W.Va. Code*, 27–1A–11(b)(5) [1983].

Furthermore, for the sake of continuity the term "juvenile" will be used throughout this

lowing are the respondents in this action: Ed Black, Director of the Adolescent Unit of Lakin Hospital; L. Clark Hansbarger, Director of the West Virginia Department of Health; and Jack L. Clohan, Director of the Division of Alcoholism and Drug Abuse of the West Virginia Department of Health. Upon the issuance by this Court of a rule to show cause, the parties have jointly moved this Court to approve stipulations between them in which the respondents have agreed to the demands of the relator and have outlined their plan for the establishment of such a comprehensive program in West Virginia. This Court has before it the petition for relief and all other matters of record.

The facts of this case, as set forth in the petition for relief, are uncontroverted. At the time the petition was filed with this Court on December 15, 1983, M.K. was a 16 year-old female in the custody of the Adolescent Unit of Lakin Hospital, located in Lakin, Mason County, West Virginia. M.K. was most recently ordered to Lakin Hospital pursuant to a March 30, 1983, finding by a Pleasants County mental hygiene commissioner that she was mentally ill due to drug addiction. The petition asserts that M.K. has a long history of substance abuse and has been a resident of Lakin Hospital on numerous occasions over the past five years. The petition indicates that within the last two years M.K. has also received treatment for her drug abuse at two hospitals located in Charleston, Kanawha County, West Virginia.[2]

According to the petition, various professionals who have had direct professional contact with M.K. throughout her history of substance abuse agree that placement in the Adolescent Unit of Lakin Hospital is an inappropriate and exceedingly restrictive environment for her proper treatment. Some of these professionals have recommended that M.K. be enrolled in a comprehensive substance abuse treatment program. One professional recommended that M.K. should be placed in a residential substance abuse treatment program. The petition asserts, and it is uncontested by the parties, that such a program for juveniles does not exist at Lakin Hospital nor does it exist anywhere in West Virginia. The relator prays that this Court compel the respondents to establish such a comprehensive substance abuse treatment program for juveniles in this State.[3]

The relator contends that the respondents are obligated under various statutory and case authority to provide her and other similarly situated juveniles with a state-wide comprehensive substance abuse treat-

opinion to refer to the relator and all other persons similarly situated with respect to age.

2. The petition notes that M.K. was also ordered to the Adolescent Unit of Lakin Hospital on March 2, 1983, when a Kanawha County mental hygiene commissioner found probable cause to believe that M.K. was addicted to drugs. The petition asserts that according to her hospital admission records M.K. has been a resident of the Adolescent Unit of Lakin Hospital eight to fifteen times and that an evaluation of M.K. by a consulting child psychiatrist for Lakin Hospital indicates that she has been "placed" approximately 40 times throughout her life.

3. In her petition, M.K. also contended that while a resident at Lakin Hospital, she was being housed in inappropriate and unlicensed facilities due to an altercation with other residents of the hospital and sought to compel the respondents to move her to appropriate living quarters. In addition, the relator prayed that while this action is pending before this Court, she should be "placed" in an appropriate residential substance abuse treatment program in another state pursuant to the Interstate Compact on Mental Health, *as amended, W.Va.Code,* 27–14–1 to 27–14–5. This compact permits the placement of "mentally ill and mentally deficient" patients in facilities of cooperating states "whenever there are factors based upon clinical determinations indicating that the care and treatment of said patient would be facilitated or improved thereby." *W.Va.Code,* 27–14–1, art. III, subsection (b) [1957].

These issues no longer need be decided. On February 9, 1984, this Court granted a joint motion by the parties in which they sought an order releasing M.K. from Lakin Hospital and this Court's approval of her placement in "Alternatives," an adolescent drug treatment program located in Cincinnati, Ohio. However, in another joint motion filed April 10, 1984, this Court was asked to approve M.K.'s return to the Adolescent Unit of Lakin Hospital due to her expulsion from "Alternatives" for failure to abide by the rules. This Court granted the motion and approved M.K.'s temporary return to Lakin Hospital "until appropriate placement can be arranged elsewhere."

ment program. With respect to the duties of the Director of the West Virginia Department of Health, *W.Va.Code*, 16–1–10 [1983], provides, in relevant part, as follows:

> The director shall be the chief executive, administrative, and fiscal officer of the department of health and shall have the following powers and duties:
>
> . . . .
>
> (19) To provide in accordance with this subdivision and the definitions and other provisions of article one-A, chapter twenty-seven of the Code, for a comprehensive program for the care, treatment and rehabilitation of alcoholics and drug abusers; for research into the cause and prevention of alcoholism and drug abuse; for the training and employment of personnel to provide the requisite rehabilitation of alcoholics and drug abusers; and for the education of the public concerning alcoholism and drug abuse. . . .

In addition, under the provisions of *W.Va. Code*, 27–1A–11 [1983], the supervisor and personnel of the Department of Health's Division of Alcoholism and Drug Abuse "shall assist the director of the department of health" in the realization of the above objectives. *W.Va.Code*, 27–1A–11(a)(1) [1983].[4]

Under the provisions of *W.Va.Code*, 27–5–9(b) [1977], "[e]ach patient of a mental health facility receiving services therefrom shall receive care and treatment that is suited to his needs and administered in a skillful, safe and humane manner with full respect for his dignity and personal integrity." In addition, subsection c of that same statute further provides that "[e]very patient shall have the following rights regardless of adjudication of incompetency: (1) Treatment by trained personnel; * * * and, (4) Treatment based on appropriate examination and diagnosis by a staff member

operating within the scope of his professional license."

Based upon the concepts contained in *W.Va.Code*, 27–5–9 [1977], this Court recently enunciated a clear mandate to the Director of the Department of Health with respect to the treatment and rehabilitation of patients in our mental health hospitals. In *E.H. v. Matin*, 168 W.Va. 248, 284 S.E.2d 232 (1981), four patients of Huntington Hospital petitioned this Court for a writ of mandamus seeking to compel the clinical director of that hospital and the Director of the Department of Health "to provide them with the services to which they are entitled under *Code*, 27–5–9 [1977]." 168 W.Va. at 250, 284 S.E.2d at 233. After reviewing the substandard conditions under which the petitioners were living and receiving treatment, this Court set forth basic principles in the syllabus regarding the rights of patients in our mental health hospitals:

> 1. *W.Va.Code*, 27–5–9 [1977] provides specific rights to all mental patients confined in the State hospitals of West Virginia and these rights may be enforced by an action in mandamus against the responsible state officials.
>
> 2. *W.Va.Code*, 27–5–9 [1977] requires a system of custody and treatment in State mental hospitals which reflects the competent application of current, available scientific knowledge.
>
> 3. It is the obligation of the State to provide the resources necessary to accord inmates of State mental institutions the rights which the State has granted them under *W.Va.Code*, 27–5–9 [1977].

Generally, as we held in syllabus point 1 of *Citizens Concerned About Valley Mental Health Center v. Hansbarger*, 172 W.Va. 519, 309 S.E.2d 17 (1983), "[t]he West Virginia Department of Health through its Board of Health and Director has a duty to insure the effective delivery

---

**4.** Although the Division of Alcoholism and Drug Abuse is designated in *W.Va.Code*, 27–1A–11 [1983], as "heretofore established in the department of mental health ...," such Division is under the control of the Director of the Department of Health. As we noted in *Citizens Concerned About Valley Mental Health Center v.*

*Hansbarger*, 172 W.Va. 522, n. 3, 309 S.E.2d 17, n. 3 (1983), in 1977 "[a] new West Virginia Department of Health was formed and the West Virginia Department of Mental Health was brought into the new Department of Health." *See W.Va.Code*, 27–2–1 [1977].

of mental health services in this State. *W. Va. Code,* 16–1–1 [1977]."

With respect to alcohol abusers, this Court, in *McGraw v. Hansbarger,* 171 W.Va. 758, 301 S.E.2d 848 (1983), was recently petitioned to compel the Director of the Department of Health and other government officials to provide and fund "detoxification and alcoholism treatment programs at community mental health centers...." 171 W.Va. at 761, 301 S.E.2d at 851. In *McGraw,* we concluded that the respondents did possess an obligation under our laws to provide such programs through the Department of Health's mental health centers. However, in so holding, we further held in syllabus point 1, based upon the aforementioned principles contained in *W. Va. Code,* 16–1–10(19) [1983], that "[t]he Director of the Department of Health has an affirmative duty to provide a comprehensive program for the care, treatment and rehabilitation of alcoholics." *See State ex rel. Harper v. Zegeer,* 170 W.Va. 743, 296 S.E.2d 873, 885 (1982).

As noted above, *W. Va. Code,* 16–1–10(19) [1983], provides that the Director of the Department of Health "shall" have the duty to "provide ... for a comprehensive program for the care, treatment and rehabilitation of alcoholics and drug abusers." That statutory provision does not distinguish between the duty owed to adult substance abusers and juvenile substance abusers. Based upon all of the above, it is therefore clear that under the provisions of *W. Va. Code,* 16–1–10(19) [1983], *W. Va. Code,* 27–1A–11 [1983], and *W. Va. Code,* 27–5–9 [1977], the West Virginia Department of Health, through its Director and other personnel, has an affirmative duty to provide a comprehensive program for the care, treatment and rehabilitation of juvenile substance abusers.

It is undisputed by the parties that despite this unambiguous mandate to the Director of the Department of Health by the legislature, a comprehensive substance abuse treatment program for juveniles is nonexistent in West Virginia. However, this Court is without sufficient information or expertise to determine or develop the proper composition of such a program. As we noted in *E.H. v. Matin, supra,* 168 W.Va. at 258, 284 S.E.2d at 237:

> In cases of this type it is important for courts to recognize that we are not experts in medicine, mental health, or institutional management. Furthermore, among the best trained professionals in the field of mental health there is an enormous divergence of opinion concerning appropriate management of related institutions and appropriate techniques of therapy for different categories of patients.

Nevertheless, we are well aware of the void that exists in our mental health system with respect to the care, treatment and rehabilitation of juvenile substance abusers. Inasmuch as the parties have agreed upon the basic framework of this statewide comprehensive program, upon review thereof, this Court will approve the stipulations between the parties with a recognition of the respondents' affirmative statutory duties.[5]

---

5. In the stipulations between the parties the respondents have agreed to the following:

    a. Provide substance abuse prevention programs for youth.

    b. Provide assessments and crisis intervention services for youth with suspected drug and alcohol problems including offering such services to youth in shelter care.

    c. Provide statewide training programs to teach adolescent drug intervention strategies to community mental health programs and other child care professionals by September 1, 1984.

    d. Provide technical assistance to community mental health centers to ensure establishment of statewide outpatient treatment programs for juveniles with substance abuse dependencies.

    e. Establish agreements with public or private hospitals to provide acute short-term medical detoxification of youth needing such services in each regional community mental health catchment area. Ten such agreements shall be established by January 1, 1985, and more, if determined to be needed, the following year.

    f. Provide in the Fiscal Year 1984–1985 funding contracts issued to community mental health centers that service to juveniles with chemical dependency is a required priority service.

    g. Require that community mental health centers as part of their budget submission and application for funding contract for the 1984–1985 fiscal year, demonstrate how they can offer partial hospitalization or day treatment

Based upon all of the above, the joint motion for approval of stipulations is hereby granted and the writ of mandamus for which the petitioner prays is granted as moulded.

Writ granted as moulded.

and outpatient services to youth who are substance abusers and further to require that such programming shall demonstrate a preference for: operating group programs in conjunction with a school system; operating peer support programs; operating family or multi-family chemical dependency programs; operating group treatment programs to serve youth in group homes or other residential programs.

h. Utilize the information gained from the process described in paragraph ... [g] ... above to provide technical assistance, including the use of out-of-state practitioners and persons in the Division of Medical Services, West Virginia Department of Human Services, to initiate partial hospitalization or day treatment programs for chemically dependent youth.

i. Issue a notice by memo that the interdisciplinary team shall notify the Division on Alcoholism and Drug Abuse for assistance in service from that Division if it is determined that a youth's major problem is chemical dependency.

j. Direct that the Division on Alcoholism and Drug Abuse shall coordinate activities dealing with juvenile substance abuse services and shall work with the Coordinator for Juvenile Services, if or when such a person is hired by the Department. The Division's coordination efforts shall include:

1. Developing the system of care referenced in this stipulation including a referral system for services offered in-state and out-of-state.

2. Identifying funding sources and preparing cost estimates for the services mentioned herein for inclusion in the Department of Health's budget for Fiscal Year 1985–1986.

3. Assuring provision of staff and/or consultant expertise to secure services referenced in this stipulation. Development and funding of residential treatment programs for adolescents shall remain a priority of the Division.